HENRY VON BREMEN et al., Individually and as Copartners under the Firm Name of VON BREMEN, ASCHE & CO., Appellants, *v.* FRANK MACMONNIES et al., Individually and as Copartners under the Firm Name of MACMONNIES & VON ELM, Respondents.

**Sale — when purchaser of good will of business may enjoin former member of firm from soliciting business from customers — when sale of good will deemed voluntary.**

The good will of a business, which the owner thereof parts with *in invitum*, is a lesser property than the good will, which is the subject of a voluntary sale and transfer by the owner for a valuable consideration.

A purchaser for a valuable consideration, on a voluntary sale of the good will of the business of a firm, may enjoin former members thereof from soliciting business from the customers of the old firm.

The sale of the good will of a partnership business is to be deemed a voluntary transaction, notwithstanding the fact that it anticipated by only a short time the actual termination of the partnership, and was made as an alternative of a liquidation.

*Von Bremen* v. *MacMonnies*, 138 App. Div. 319, modified.

(Argued September 29, 1910; decided November 22, 1910.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 6, 1910, modifying and affirming, as modified, an interlocutory judgment of Special Term.

The order granting leave to appeal certified the following questions to this court:

*First.* Whether, upon the facts found in this case, the plaintiffs are entitled to an injunction against the defendants restraining them from soliciting the trade of the customers and the persons, firms and corporations who purchased merchandise from the firm of Von Bremen, MacMonnies & Co., of which the plaintiff Von Bremen and the defendants were copartners.

*Second.* Whether, upon the facts found in this case, the plaintiffs are entitled to an injunction against the defendants

restraining them from soliciting the trade of the persons, firms and corporations named on the list of trade established by the firm of Von Bremen, MacMonnies & Co., and abstracted by the defendants, as found by the court in its decision.

*Third.* Whether, upon the facts found in this case, the plaintiffs are entitled to an injunction against the defendants restraining them from dealing with, or selling merchandise to, the customers and the persons, firms and corporations purchasing merchandise from the firm of Von Bremen, Mac-Monnies & Co., of which the plaintiff Von Bremen and the defendants were copartners.

*Fourth.* Whether, upon the facts found in this case, the plaintiffs are entitled to an injunction against the defendants restraining them from dealing with, or selling merchandise to, the persons, firms and corporations mentioned on the list of trade, compiled by the firm of Von Bremen, MacMonnies & Co., and abstracted by the defendant as found by the court in its decision.

*Fifth.* Whether, upon the facts found in this case, the plaintiffs are entitled to an injunction against the defendants restraining them from dealing with, or selling merchandise to, the persons, firms and corporations who were customers of or purchased merchandise from the firm of Von Bremen, Mac-Monnies & Co., of which the plaintiff Von Bremen and the defendants were copartners, and whose trade was solicited by the defendants since selling their interests in the said firm to the plaintiff Von Bremen.

*Sixth.* Whether, upon the facts found in this case, the plaintiffs are entitled to an injunction against the defendants restraining them from dealing with, or selling merchandise to, the persons, firms and corporations mentioned on the list of trade compiled and established by the firm of Von Bremen, MacMonnies & Co., abstracted by the defendants, as found by the court in its decision, whose trade has been solicited by the defendants.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Gustav Lange, Jr.*, for appellants.   The defendants by their sale to the plaintiff Von Bremen, to whose rights the plaintiffs have succeeded, precluded themselves from in any way interfering with any of the advantages the old firm enjoyed, including the right to solicit the trade of or deal with the customers of the old firm and such persons, firms or corporations whose trade was regularly solicited and who were named on the list of trade of the old firm.   (*Goetz* v. *Ries*, N. Y. L. J. March 12, 1907; 127 App. Div. 940 ; *Kates* v. *Bok*, N.Y. L. J. Jan. 8, 1910 ; *People ex rel. Johnson* v. *Roberts*, 159 N. Y. 70 ; *Slater* v. *Slater*, 157 N. Y. 143 ; *Witkop & Holmes Co.* v. *Boyce*, 112 N. Y. Supp. 874 ; 61 Misc. Rep. 128 ; *Steinfeld* v. *Nat. S. W. Co.*, 99 App. Div. 286 ; *Kellogg* v. *Totten*, 16 Abb. Pr. 35 ; *Sandford Dairy Co.* v. *Sandford*, 114 App. Div. 862 ; *Matter of Case*, 122 App. Div. 343 ; *Merry* v. *Hopes*, 111 N. Y. 415 ; *Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462 ; *Caswell* v. *Hazard*, 121 N. Y. 484.) Good will is every advantage that a firm or an individual or a corporation has acquired in carrying on the business.   (*Churton* v. *Douglas*, H. R. V. Johns. 174 ; *People ex rel. Johnson* v. *Roberts*, 159 N. Y. 80 ; *Ginesi* v. *Cooper*, L. R. [14 Ch. Div.] 596 ; *Trego* v. *Hunt*, L. R. [App. Cas. 1896], 7 ; *Wedderburn* v. *Wedderburn*, 23 Beav. 84.)

*Adam K. Stricker, Abraham Benedict* and *Sidney G. Stricker* for Norbert B. Kates, intervening.   The defendants, by their sale of the good will, impliedly covenanted that they would not derogate from their grants or deprive the plaintiffs of the good will so purchased.   (*Labouchere* v. *Dawson*, L. R. [13 Eq.] 322 ; *Pearson* v. *Pearson*, L. R. [27 Ch. Div.] 145 ; *Vernon* v. *Hallam*, L. R. [34 Ch. Div.] 748 ; *Trego* v. *Hunt*, L. R. [App. Cas. 1896] 7 ; *People ex rel. Johnson Co.* v. *Roberts*, 159 N. Y. 70 ; *Goetz* v. *Ries*, N. Y. L. J. April 25, 1907 ; *Curl Bros.* v. *Webster*, L. R. [1 Ch. Div.] 685 ; *Jennings* v. *Jennings*, L. R. [1 Ch. Div. 1898] 378 ; *Gillingham* v. *Beddow*, L. R. [2 Ch. Div. 1900] 242 ; *A., M. & C. Co.* v. *McGaw*, 144 Fed. Rep. 864 ; *Zanturjian* v.

*Boornazian*, 25 R. I. 151.) The distinction made in the case at bar between the sale of the good will of a copartnership about to terminate by the expiration of the term fixed by the articles of copartnership and the sale of the good will of a copartnership not about to terminate is an arbitrary distinction, difficult of application, and is not sound law. (*Freeman* v. *Freeman*, 86 App. Div. 110; 1 McAdam on Land. & Ten. [3d ed.] 787.)

*George W. Titcomb* and *Frederick Allis* for respondents. An ex-partner, who has not estopped himself by his own deed, may compete with his old firm by all fair and usual methods of business, whether it impairs the value of its business or not. (*Fischer* v. *Blank*, 138 N. Y. 244; *Royal* v. *Jenkins*, Price & S. T. M. Cas. 309; *Higgins* v. *Higgins*, 144 N. Y. 462; *Coleman* v. *Crump*, 70 N. Y. 573; *Westcott* v. *Oneida*, 122 App. Div. 258; *U. S. Cordage Co.* v. *Wall's Son*, 90 Hun, 434; *White* v. *Jones*, 1 Abb. [N. S.] 337; *McLean* v. *Fleming*, 96 U. S. 245; *Shaver* v. *Heller*, 108 Fed. Rep. 826.) It is admitted that there is no express grant or covenant concerning solicitation of old customers in this case. In the absence of such express stipulation, the sale of one partner's interest to the others must be construed as containing no prohibition against the outgoing partner competing for the old business and permitting him to solicit the old customers. (Nims on Unfair Comp. 110; *Cottrell* v. *Babcock* 54 Conn. 122; *Williams* v. *Farrand*, 88 Mich. 473; *Vander, bank* v. *Schmidt*, 44 La. Ann. 264; *Zanturjian* v. *Boornazian*, 25 R. I. 151; *Ward* v. *Ward*, 40 N. Y. S. R. 793; *U. S. Cordage Co.* v. *Wall's Son*, 90 Hun, 434; *Dayton* v. *Wilkes*, 19 How. Pr. 551; *Close* v. *Fletcher*, 8 Misc. Rep. 301; *Ex parte Yarborough*, 110 U. S. 568; *Morse* v. *Yarborough*, 85 N. Y. 53, 60.) As a matter of fact, the parties did not sell, nor intend to sell, with the good will sold in this case, an exclusive right to plaintiffs to solicit the old customers, nor to impose on defendants a covenant not to solicit them. (*Filkins* v. *Whyland*, 24 N. Y. 338; *Eighmie* v. *Taylor*, 98

N. Y. 288; *Zanturjian* v. *Boornazian*, 25 R. I. 155 ; Nims on Unfair Comp. 111; *People* v. *Sheldon*, 139 N. Y. 251; *Diamond* v. *Roeber*, 106 N. Y. 480 ; *U. S. Cordage Co.* v. *Wall's Son*, 90 Hun, 434; *Ward* v. *Ward*, 40 N. Y. S. R. 793 ; 15 N. Y. Supp. 913 ; *Dayton* v. *Wilkes*, 19 How. Pr. 551; *Close* v. *Fletcher*, 8 Misc. Rep. 301.) No restriction should be implied on free business competition, including the right to solicit former customers of the old firm, because the sale was involuntary, not a free sale. (*Hutchinson* v. *Nay*, 187 Mass. 265 ; *Old Corner* v. *Upham*, 194 Mass. 101.)

*Perry Allen* for Gustav Bok, intervening. The meaning of the term " good will " in every contract assigning the same is a question of fact determinable only upon an examination of the facts and circumstances of the particular transaction. (*Goetz* v. *Ries*, N. Y. L. J. March 12, 1907 ; *Thomas* v. *Scutt*, 127 N. Y. 133 ; *Murdock* v. *Gould*, 193 N. Y. 369 ; *U. S.* v. *Bethlehem*, 205 U. S. 105 ; *Lowney* v. *Hawaii*, 206 U. S. 221 ; *Gill Mfg. Co.* v. *Hurd*, 18 Fed. Rep. 673 ; *Kennedy* v. *Porter*, 109 N. Y. 526 ; *Reading* v. *Gray*, 5 J. & S. 79 ; *Stokes* v. *Recknagle*, 6 J. & S. 368 ; *Lyons* v. *Motley*, 9 Misc. Rep. 509.)

WILLARD BARTLETT, J.   On May 10, 1904, one of the plaintiffs, Henry Von Bremen, and the defendants Frank MacMonnies and William Von Elm entered into a copartnership under the firm name of Henry Von Bremen & Co., subsequently changed to Von Bremen, MacMonnies & Co., for the transaction of an importing and commission business in buying, taking on commission and selling all sorts of fancy groceries, which copartnership by the terms of the agreement was to continue until the 30th day of April, 1909.   On February 10th, 1909, the defendants sold to the plaintiff Henry Von Bremen " all their right, title and interest in all the assets, good will, trade marks and other property of every name and nature wheresoever located of the firm of Von Bremen, MacMonnies & Co., together with all debts and things

in action due or owing by or from any person or corporation to said firm." The consideration for this transfer was the payment of $44,000, which was $1,500 more than the book value of the property transferred. There was no specific valuation of the good will. The plaintiffs Henry Von Bremen and Herman T. Asche, under the firm name of Von Bremen, Asche & Co., have succeeded to the business thus purchased by the plaintiff Henry Von Bremen individually. Shortly after his purchase, the defendants formed a partnership under the firm name of MacMonnies & Von Elm for the transaction of a similar business in fancy groceries. In the competition which thus arose the defendants have done or threatened to do various acts which the plaintiffs contend have a tendency to lessen or destroy the good will of the business which they acquired from the defendants by means of the transfer which has been mentioned. The present suit was brought to enjoin such acts. The trial court, by its interlocutory judgment, granted a portion but not the whole of the relief for which the plaintiffs prayed. It enjoined the defendants from using the cable address of the old firm, which was " MacMonnies; " from using a list of 2,200 dealers in fancy groceries which had been compiled by the old firm ; and from using labels, brands, trade marks, bottles, tins and other packages, such as were exclusively owned or controlled by the old firm. The interlocutory judgment also directed an accounting for the profits realized by the defendants and an assessment of the damages sustained by the plaintiffs.

Upon their appeal to the Appellate Division, the plaintiffs obtained some additional relief, but still not as much as they desired. The injunction granted at Special Term was extended so as to enjoin the defendants from soliciting the agency for the sale of articles of which the old firm had the exclusive agency and from soliciting orders for goods packed under special labels, trade marks and brands devised for the old firm for special customers. One member of the Appellate Division thought that the defendants should also be restrained from soliciting any of the customers of the old firm, but a

majority of the court refused to go as far as this. The principal question presented by the plaintiffs' appeal to this court is whether the injunction should be thus extended.

The answer to this question depends upon the meaning to be given to the term good will in the transfer of the business of the old firm of Von Bremen, MacMonnies & Co. to the plaintiff Henry Von Bremen on February 10, 1909. If the law assigns a definite meaning to the term as used or implied in the voluntary transfer of a business, it must be presumed that such was its signification in this contract. We have to inquire, then, what are the restraints which the law imposes upon the assignor of the good will of a business, who transfers the same voluntarily, and not as the result of bankruptcy proceedings or under like compulsion.

The principal definitions of good will were fully stated and discussed by Judge Vann in *People ex rel. A. J. Johnson Co.* v. *Roberts* (159 N. Y. 70), and it is not necessary to repeat that statement or discussion here. Of all the noteworthy definitions the narrowest is probably that of Lord Eldon, who, in 1810, defined good will as "the probability that the old customers will resort to the old place." (*Cruttwell* v. *Lye*, 17 Vesey, Jr., 335, 346.) On the other hand, one of the broadest definitions is that suggested in 1859 by Vice-Chancellor Page-Wood, who declared that good will included "all that good disposition which customers entertain towards the house of business identified by the particular name or firm, and which may induce them to continue giving their custom to it." Again, he said : "Good will must mean every advantage  *  *  *  that has been acquired by the old firm in carrying on its business, whether connected with the premises in which the business was previously carried on, or with the name of the late firm, or with any other matter carrying with it the benefit of the business." (*Churton* v. *Douglas*, Johns. Ch. [Eng.] 174.)

Whatever definition of good will may be adopted, however, it appears to have been uniformly held that in case of a transfer thereof, the assignor, in the absence of an express agree-

ment to the contrary, may carry on a similar business in the same locality. The question which has given most trouble to the courts in such cases has related to the right of the vendor of the good will to solicit business from the customers of the old firm. In England the controversy on this subject extends from the case of *Labouchere* v. *Dawson* (L. R. [13 Eq.] 322), decided by Lord ROMILLY, Master of the Rolls, in 1872, to *Trego* v. *Hunt* (L. R. [App. Cas. 1896] 7), decided by the House of Lords in 1895. *Labouchere* v. *Dawson* was the case of a sale of a brewery business upon the death of one of two partners. The surviving partner set up business as a brewer — there being no stipulation to prevent him from so doing — and solicited orders from customers of the old firm. Lord ROMILLY held that although he might go into the brewing business himself and publicly advertise that business, he could not lawfully apply to any customer of the old firm, either "privately, by letter, personally, or by traveler, asking them to continue their custom with the defendant, and not to go to the vendees." Another distinguished master of the rolls, Sir GEORGE JESSEL, laid down the same rule in *Ginesi* v. *Cooper & Co.* (L. R. [14 Ch. Div.] 596), decided in 1880, and went still further, declaring that he was prepared to hold, if the question had been raised, that the assignor of the good will could not even deal with the customers of the old firm, although they came to him unsolicited. The same learned judge carried this view of the law into effect in a subsequent case (*Leggott* v. *Barrett*, L. R. [15 Ch. Div.] 306), where he granted an injunction which forbade the vendor of a business not only from soliciting trade from the customers of the former firm, but also from dealing with such customers at all. The Court of Appeal, however, vacated the latter part of the injunction. Shortly afterward the same court held that the doctrine of *Labouchere* v. *Dawson* (*supra*) against the solicitation of business from customers of the former concern did not apply and should not be extended to cases of compulsory alienation, so that "if the assignees of a bankrupt sell his business and

good will the purchaser cannot restrain the bankrupt either from commencing a similar business himself or from solicit ing his old customers to deal with him in his new business." (*Walker* v. *Mottram*, L. R. [19 Ch. Div.] 355.)

Although the decision last cited apparently sanctioned the rule laid down in *Labouchere* v. *Dawson*, the doctrine of that case was distinctly overruled by two out of the three judges of the Court of Appeal (Baggallay and Cotton, L. JJ., against Lindley, L. J.) in *Pearson* v. *Pearson* (L. R. [27 Ch. Div.] 145), decided in 1884. The rule that the vendor of a partnership business may not solicit trade from the customers of the old firm was rejected and an injunction which had been granted prohibiting such solicitation was dissolved upon appeal. The law as thus declared remained unquestioned for more than ten years. It was during this period that the case of *Marcus Ward & Co.* v. *Ward* (40 N. Y. S. R. 792) was decided by the General Term of the Supreme Court in the first department, expressly following *Pearson* v. *Pearson* as the latest expression of judicial opinion in England on the subject. The question does not appear ever to have reached this court until now. It finally went to the House of Lords in 1895 in the case of *Trego* v. *Hunt* (L. R. [App. Cas. 1896] 7) where it received elaborate consideration in opinions by Lord Herschell, Lord Macnaghten and Lord Davey, resulting in a disapproval of the decision of the Court of Appeal in *Pearson* v. *Pearson* and a restoration of the doctrine of *Labouchere* v. *Dawson*.

The substance of the decision of the House of Lords in *Trego* v. *Hunt* may be briefly stated. The sale of the good will of a business, even when the vendor himself is a party to the contract, does not impose upon him any obligation to refrain from carrying on a trade of the same nature as before. The obligations imposed upon the vendor in the case of the sale of the good will are not necessarily the same under all circumstances. Lord Herschell conceded it to be the settled

4

law that whenever the good will of a business was sold the vendor did not, by reason only of that sale, come under a restriction not to carry on a competing business.   In cases where a partnership has been dissolved by effluxion of time or death, he thought it would be absurd to hold that those who formerly constituted the firm or their survivors should be restrained from carrying on what trade they pleased.   But it does not follow " that because a man may, by his acts, invite all men to deal with him, and so, amongst the rest of mankind, invite the former customers of the firm, he may use the knowledge which he has acquired of what persons were customers of the old firm in order, by an appeal to them, to seek to weaken their habit of dealing where they have dealt before, or whatever else binds them to the old business, and so to secure their custom for himself.   *   *   *   It is true that those who were former customers of the firm to which he belonged may of their own accord transfer their custom to him ; but this incidental advantage is unavoidable, and does not result from any act of his.   *   *   *   But when he specifically and directly appeals to those who were customers of the previous firm he seeks to take advantage of the connection previously formed by his old firm, and of the knowledge of that connection which he has previously acquired, to take that which constitutes the good will away from the persons to whom it has been sold and to restore it to himself."   Lord Herschell deemed it immaterial to consider whether on the sale of a good will " the obligation on the part of the vendor to refrain from canvassing the customers is to be regarded as based on the principle that he is not entitled to depreciate that which he has sold, or as arising from an implied contract to abstain from any act intended to deprive the purchaser of that which has been sold to him and to restore it to the vendor." He was satisfied that the obligation existed and that it ought to be enforced by a court of equity.

Lord Macnaghten, in his opinion in *Trego* v. *Hunt,* thus summarizes the various ways in which the doctrine of *Labouchere* v. *Dawson* may be supported : " A man may not dero-

gate from his own grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold; there is an implied covenant, on the sale of good will, that the vendor does not solicit the custom which he has parted with; it would be a fraud on the contract to do so. These, as it seems to me, are only different terms and glimpses of a proposition which I take to be elementary. It is not right to profess and to purport to sell that which you do not mean the purchaser to have; it is not an honest thing to pocket the price and then to recapture the subject of sale; to decoy it away or call it back before the purchaser has had time to attach it to himself and make it his very own."

The good will, which the owner thereof parts with *in invitum*, as in bankruptcy proceedings or by operation of law, as in the liquidation of a partnership by the lapse of time or its termination pursuant to the articles of copartnership, is a lesser property than the good will which is the subject of a voluntary sale and transfer by the owner for a valuable consideration. In the first class of cases the former owner remains under no legal obligation restricting competition on his part in the slightest degree; in the second class of cases the former owner, by his voluntary act of sale, has excluded himself from competing with the purchaser of the good will to the extent of having impliedly agreed that he will not solicit trade from customers of the old business. To this extent this good will is a more valuable property than the good will of a business which goes to a trustee in bankruptcy or a receiver or survivor of a partnership in liquidation. The good will which is the subject of a voluntary sale is, therefore, a different thing from the good will which the owner parts with perforce or under compulsion. This is a necessary implication from the principle upon which *Labouchere* v. *Dawson* and *Trego* v. *Hunt* were decided.

The necessity for the distinction which the law thus makes may readily be illustrated. If the sale of the good will upon the ordinary dissolution and liquidation of a partnership imported the same obligation as that which arises upon a

voluntary sale, not to solicit trade from customers of the old firm, merchants who had been in trade as partners of undesirable associates would constantly find themselves, by the mere fact of the dissolution of the firm they desired to leave, disqualified from seeking future business from those who might be their most desirable customers. Such a restriction should be imposed and is imposed only when the transfer of the good will is a free affirmative act, and is made under such circumstances that it would be bad faith on the part of the vendor to avail himself as against the vendee of any special knowledge or advantage derived by him from the business whose good will he has voluntarily sold.

Courts of high repute in this country have adopted the same view as that of the House of Lords in *Trego* v. *Hunt* in reference to the right of a voluntary assignor of the good will of a business to solicit trade from old customers. It obtains in Massachusetts, New Jersey, Michigan, Rhode Island, Illinois and Pennsylvania. (*Hutchinson* v. *Nay*, 187 Mass. 262; *Newark Coal Co.* v. *Spangler*, 54 N. J. Equity, 354; *Myers* v. *Kalamazoo Buggy Co.*, 54 Mich. 215; *Zanturjian* v. *Boornazian*, 25 R. I. 151; *Ranft* v. *Reimers*, 200 Ill. 386; *Wentzel* v. *Barbin*, 189 Pa. St. 502.) Connecticut seems to be the only state in which a court of last resort has entertained a contrary view. (*Cottrell* v. *Babcock P. P. M. Co.*, 54 Conn. 122.) The rule thus sanctioned in England and in so many states of the Union commands our approval and we feel bound to give it our assent in answering the questions certified to us in the present case.

It is suggested in the opinion of the Appellate Division that the sale of the good will in this case was not really voluntary, but should be regarded as compulsory inasmuch as it merely anticipated by a few weeks the actual termination of the copartnership and was made as an alternative of a liquidation. It seems to us, however, under the findings that it must be deemed to have been a voluntary transaction no matter how powerful were the motives which led the parties to enter into it. It was a thing which they were at liberty to

do or to refrain from doing; and hence the sale was of a character which falls within the doctrine that has been discussed.

The interlocutory judgment must, therefore, be modified by extending the injunction so as to forbid the defendants from soliciting business from any customers of the former firm of Von Bremen, MacMonnies & Co., and as thus modified affirmed, with costs to the appellants.

The answers to the certified questions are as follows: The first and fifth questions are answered in the affirmative; the second question is not answered inasmuch as it does not appear whether or not the names on the list of trade therein mentioned were all those of former customers of the firm of Von Bremen, MacMonnies & Co.; the third, fourth and sixth questions are answered in the negative.

CULLEN, Ch. J., HAIGHT, VANN, WERNER, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.