MICHAEL THAL et al., Plaintiffs, *v.* RICHARD POLUMBAUM et al.,
Doing Business as ANSONIA SIGN COMPANY, et al., Defend-
ants.

Supreme Court, Special Term, New York County, December 6, 1949.

*J. Norman Lewis* and *Bernard Phillips* for plaintiffs.

*Monroe J. Cahn* for defendants.

IsidorWASSERVOGEL, Official Referee. Plaintiffs' complaint sets forth six causes of action whereby they seek an injunction, an accounting, and damages based upon the defendants' unfair

competitive practices and their conspiracy to convert and destroy plaintiffs' business and property rights.

Early in 1946, the plaintiff corporations, Lu-Bee Products Corporation, Sellevision Corporation, and Litewriter Corporation were engaged in the business of manufacturing, selling, and distributing an imprint illuminated sign which was made under patent rights owned by the plaintiff Lu-Bee Products Corporation. In February, 1949, the defendant Richard Polumbaum, who was a half-owner of the plaintiff corporations and who actively engaged in their management and operation, assigned his 50% stock interest in these corporations to the individual plaintiffs, Michael Thal and Max Shuster. After such assignment, the defendant Richard Polumbaum, together with the other individual defendant, organized the Miracle Sell-It Sign Corporation for the purpose of manufacturing, selling, and distributing imprint illuminated signs.

Plaintiffs contend that the good will, trade secrets, and patent rights of their corporations were thereafter exploited by the defendants to their own unlawful advantage. The defendants maintain that the assignment of the defendant Richard Polumbaum's interest to the individual plaintiffs did not deprive them of the right to enter into a competing business, and that, in any event, this court is without jurisdiction with respect to any alleged infringement of the patent owned by the plaintiff Lu-Bee Products Corporation.

In disposing of defendants' latter contention, it is sufficient to note that the instant action is not one based upon damages for patent infringement. Likewise, the validity of such patent is not in issue before the court. Concededly, a suit based upon the validity or infringement of a patent falls within the jurisdiction of the Federal courts. Nevertheless, it is elementary that a New York court of equity may consider the effect of a patent right, valid upon its face, insofar as it may relate to alleged unfair competitive practices.

Both sides have cited the case of *Von Bremen* v. *MacMonnies* (200 N. Y. 41) as authority for their respective positions as to whether the defendant Richard Polumbaum could properly enter into a competitive business after assignment of his stock in the plaintiff corporation. The defendants point out that the court's opinion in the *MacMonnies* case (*supra*) contained a statement to the effect that the vendor of a business is not obligated to refrain from carrying on a trade of the same nature. This, however, was not the holding in that case. The court

stated (pp. 50–51): " ' A man may not derogate from his own grant; the vendor is not at liberty to destroy or depreciate the thing which he has sold  *  *  *  it would be a fraud on the contract to do so  *  *  *. It is not right to profess and to purport to sell that which you do not mean the purchaser to have; it is not an honest thing to pocket the price and then to recapture the subject of sale; to decoy it away or call it back before the purchaser has had time to attach it to himself and make it his very own.' "

In other words, even in the absence of a restrictive covenant, a vendor, though he may compete with the purchaser of his former business, may not engage in such tactics as will unfairly interfere with the vendee's use and enjoyment of the business bought from him (*Gast Furriers Supplies* v. *Winter*, 247 App. Div. 135; *Von Bremen* v. *MacMonnies, supra*; 5 Williston on Contracts [1936 ed.], § 1640). It is neither ethical nor legal to receive moneys or other consideration for sale of a business interest and then attempt to destroy it or recapture the very features which made such purchase desirable to the vendee. Equity will not countenance such conduct on the part of a vendor which, to all intents and purposes, is tantamount to fraud and deceit (*Von Bremen* v. *MacMonnies, supra*, pp. 50–51).

Each case depends upon its own facts which must be considered independently of other situations (*Burrow* v. *Marceau*, 124 App. Div. 665, 669). It is, therefore, necessary to determine whether the acts complained of in this case amount to an unfair competitive practice on the part of the defendants.

As above stated, the validity of the patent is not in issue. The record indicates, however, that the principle of " edge-lighting " was known and used by others prior to and after the issuance of the letters patent to the plaintiff corporation. The court, therefore, will not grant a restraining order to prevent the defendants from employing the principle of edge-lighting in all manufacturing processes. Edge-lighting, in and of itself, will not be considered as a trade secret for the purposes of this action. This would be a proper subject of a patent infringement suit. However, even a cursory examination of the sign manufactured by plaintiffs and that manufactured by defendants clearly shows that they are identical in almost all respects. The shape, frame, assembly, characteristics, and materials of plaintiffs' sign are practically duplicated in the type which is manufactured by defendants. Confusion between the two is inevitable, for to all outward appearances they are

one and the same. It does not avail the defendants to attempt to show that each component part of both signs is in general use in many industries. These component parts, when assembled, form a unique article, protected by a patent, which the defendants have copied. This is evident by the fact that they have even gone so far as to use similar marking crayons in connection with their sign, even though, upon the trial of this action, it was amply demonstrated by them that any other type of crayon accomplishes the same purpose. The court agrees that no secret formula is necessary to produce a crayon which writes upon the face of the signs involved, but the very fact that the defendants adopted crayons and advertising matter upon their cartons which are almost identical with the crayons and advertising matter used by plaintiffs on their crayon cartons, is a clear indication of an attempt to palm off their product as that of the plaintiffs. A slight modification of size or shape, or the adaptation of a clock on the face of one model of the sign manufactured by the defendants, does not change the essentially similar features and characteristics of the product.

Plaintiffs have extensively advertised their product, and the evidence warrants the conclusion that their type of sign became well-known in its field prior to the entry of the defendants' product on the market. The defendants' success in manufacturing and distributing a sign almost identical with plaintiffs is largely due to the fact that the individual defendants Richard Polumbaum and George Ogens had access to all necessary information and details while they were associated with the plaintiff corporations. The manner in which the sign was assembled and distributed, its characteristics and distinctive features are valuable property rights which may not be usurped by the defendants who had access to them only because of the special and confidential position which they enjoyed (*Du Pont de Nemours Powder Co.* v. *Masland,* 244 U. S. 100, 102; *Fairchild Engine & Airplane Corp.* v. *Cox,* 50 N. Y. S. 2d 643, 650). If honesty, integrity, and ethics are to prevail in commercial enterprise, a court of equity must disapprove of any attempt to exploit information obtained as a result of a breach of trust and confidence (*Allen-Qualley Co.* v. *Shellmar Products Co.,* 31 F. 2d 293, 296). The evidence clearly shows that the defendant Richard Polumbaum, while associated with the plaintiff corporations, recognized the uniqueness and originality of the plaintiffs' product. He may not now, after disassociating himself with the plaintiff corporations, attempt to avoid these

characteristics for his own pecuniary gain (*High* v. *Trade Union Courier Pub. Corp.*, 69 N. Y. S. 2d 526, affd. 275 App. Div. 803; *Fairchild Engine & Airplane Corp.*, v. *Cox, supra*).

In the latter part of September, 1948, the plaintiff Litewriter Corporation started negotiations with a Chicago distributing firm known as " Maxilume Company " for the distribution rights to plaintiffs' sign. These negotiations were still in progress at the time the defendant Richard Polumbaum assigned his stock to the individual plaintiffs. In or about May, 1949, the plaintiff Litewriter Corporation and the Maxilume Company executed an agreement whereby Maxilume became one of the major distribution mediums for the plaintiffs' product. Despite the fact that the defendants Richard Polumbaum and George Ogens were fully cognizant of the agreement between plaintiffs and the Chicago firm, the evidence before me indicates that they nevertheless attempted to have Maxilume terminate its relationship with Litewriter Corporation and purchase imprint illuminated signs from the defendants. Documentary evidence received during the trial establishes the fact that the defendant Richard Polumbaum even went so far as to agree to indemnify the Maxilume Company against any possible suit by the plaintiffs as a result of his attempt to induce them to purchase signs from the defendant corporation. The defendants Richard Polumbaum and George Ogens, having been in a position of trust and confidence which enabled them to obtain information as to the value of the Maxilume Company's distributorship to the plaintiffs, will not be permitted to interfere with such relationship or to solicit the business of the Chicago firm, which, in effect, would destroy a great part of the value of the bona fide purchase of the defendant Polumbaum's stock by the individual plaintiffs (*Byrne* v. *Barrett*, 268 N. Y. 199; *Conviser* v. *Brownstone & Co.*, 209 App. Div. 584; *Cornibert* v. *Cohn*, 169 Misc. 285).

Plaintiffs, therefore, are entitled to an interlocutory decree restraining the defendants and persons or corporations controlled by the defendants from manufacturing imprint illuminated signs used for advertising or display purposes and from soliciting any business from those who are presently customers or from those who were customers of any of the plaintiff corporations during the period in which the defendants Polumbaum, Richard Polumbaum Co., Inc., and George Ogens were associated with such corporations. Plaintiffs are further entitled to an accounting of the matters set forth in the first,

second, and third causes of action. Plaintiffs' fourth cause of action has been withdrawn. The fifth and sixth causes of action are dismissed upon the merits. The court reserves jurisdiction of this action for the purpose of taking such accounting.

Submit decree in accordance with the foregoing within ten days on three days' notice. Such decree may provide for the taking of the accounting during the January Term of this Part.

The foregoing are the facts found by me and constitute the decision of the court as required by section 440 of the Civil Practice Act.