■ MOHAWK MAINTENANCE CO., INC., Respondent, v IRVING G. KESSLER et al., Appellants.—Order and intermediate judgment, Supreme Court, New York County, entered September 23, 1979, which, *inter alia,* enjoined the defendants from soliciting business from any person being serviced by defendant Kessler in October of 1972, modified, on the law, by amending the third decretal paragraph to permit the defendants to service those "old customers" who voluntarily seek their services without solicitation, and, as modified, affirmed, without costs. The grant or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied for *(Walker Mem. Baptist Church v Saunders,* 285 NY 462, 474). Therefore, Special Term was not bound by our prior order, entered March 20, 1979, which affirmed Justice Nadel's order, entered February 22, 1979, enjoining defendants from competing with plaintiff. Nonetheless, we all agree that Special Term correctly concluded that defendants were precluded, under the 24-month restrictive covenant in the employment agreement, from competing with plaintiff at any time before August 1, 1980. We also agree that, after August 1, 1980, defendants may solicit the business of any new customer whose building was first serviced after defendant Kessler sold his business interest in October of 1972. However, we disagree as to whether defendants should be forever

enjoined from soliciting the business of those customers who were being serviced by defendant Kessler in October of 1972. In *Diamond Match Co. v Roeber* (106 NY 473), the Court of Appeals upheld a sales agreement which provided, *inter alia,* that the vendor would not compete with the vendee for a period of 99 years. The court noted (p 484) that, even though the agreement was practically unlimited as to time, this provision was not an objection to its enforceability, if the contract was otherwise good. It was also stressed (p 483) that a party may legally purchase the trade and business of another for the very purpose of preventing competition, and the validity of the contract, if supported by consideration, would depend upon its reasonableness as between the parties. Because the vendor in *Diamond* had received significant consideration, in both money and stock, the court found that the time and other restrictions in the agreement were valid *(Diamond Match Co. v Roeber, supra,* p 486). In a different factual setting, the principle has recently been reaffirmed that a covenant will not be declared invalid because it forever restricts a party from competing with another party (cf. *Karpinski v Ingrasci,* 28 NY2d 45, 50). Hence, it is not against public policy to enjoin a particular vendor from forever seeking the business of an "old customer". In this proceeding, the sales agreement and the employment agreement are silent on the question of whether defendants may solicit, after August 1, 1980, customers serviced by defendant Kessler in October, 1972. Nevertheless, we, in the majority, would restrict defendants from soliciting that group of "old customers" after August 1, 1980. Ordinarily, the transfer of a business passes the "good will" thereof unless the good will is expressly reserved or excepted *(Merry v Hoopes,* 111 NY 415, 420; 25 NY Jur, Good Will, § 13). Thus, even though the subject sales agreement did not mention "good will", it implicitly passed with the sale of defendant Kessler's business. The Court of Appeals has stated that the vendor of a business may not solicit his "old customers" *(Von Bremen v MacMonnies,* 200 NY 41, 52; 25 NY Jur, Good Will, § 16). The *Von Bremen* court did not see fit to limit the time after which the vendor could solicit those "old customers". However, case law has permitted a vendor to handle the business of those "old customers" who have come to him without solicitation. *(Gast Furriers Supplies v Winter,* 247 App Div 135, 136; *Planet Mfg. Corp. v Goldstein,* 54 AD2d 896.) Summarizing, while we are now enforcing a restrictive covenant in an employment rather than a sales agreement, the overriding consideration is the fact that the covenant was given in conjunction with the sale of a business. (See, generally, *Purchasing Assoc. v Weitz,* 13 NY2d 267, 271.) Since the defendant received approximately $2,000,000 in stock in selling his business, it is reasonable for this court to enjoin him and his present firm from soliciting his "old customers" at any time in the future. Defendants may render services to those "old customers" if the latter seek such services without solicitation on defendants' part. Concur—Murphy, P. J., Kupferman and Lynch, JJ.

Silverman and Bloom, JJ., dissent in part in a memorandum by Bloom, J., as follows: Our sole point of difference with the majority is the duration of the restrictive covenant governing Kessler's solicitation of the plaintiff's "old" customers, i.e., those customers serviced by him prior to October 10, 1972, the date of the sale. We would limit it to August 1, 1980. We do not dispute the statement of the law as set forth in the majority memorandum. However, in this case the agreement to sell, which was executed on May 19, 1972, contained the following provision in a supplement: "7. Non-competition undertakings and employment agreement [section 11.10] A. The following stockholder is to execute non-competition undertakings upon the terms

indicated: Irving Kessler to undertake that he will not, either as owner, partner, officer, employee, agent, consultant manager, lessee or lessor or in any other capacity, directly or indirectly (a) for a period of 5 years after the Closing Date carry on or engage in New York or Connecticut (or such other state where the Corporations are conducting business on the Closing Date) in any business competitive with any business carried on by the Corporations on the Closing date". In conformance therewith Kessler, on October 10, 1972, the date the sale was consummated, executed a covenant not to compete which read, in part, as follows: "TO: International Telephone and Telegraph Corporation The undersigned Stockholder of Mohawk Maintenance Co., Inc., ('Mohawk') undertakes that he will not, either as owner, partner, officer, employee, agent, consultant manager, lessee or lessor or in any other capacity, directly or indirectly (a) for a period of 5 years after the date hereof carry on or engage in New York or Connecticut or such other state where Mohawk or Mala Services Inc., ('Mala') are conducting business on the date hereof in any business competitive with any business carried on by Mohawk or Mala on the date hereof". Inasmuch as the parties, by express treaty, limited the duration of the restriction to a period of five years, we would not see any reason to expand it to August 1, 1980, were it not for the provision in the employment agreement which restricts Kessler from competing with plaintiff for a period of 24 months after termination of that agreement. That period expires August 1, 1980. Accordingly, we would amend the order and intermediate judgment to provide that Kessler shall be free to service both "new" and "old" customers on and after August 1, 1980.