Jones, J.
(dissenting). I am in agreement with the dissenters at the Appellate Division that this case is taken out of the general rule on which the majority relies by the “express treaty” of the parties. I would, therefore, vote to reverse and hold that defendant Irving Kessler was free from any obligation not to solicit his former customers after August 1, 1980.
The terms of the 1972 sale of Kessler’s 90% interest in plaintiff corporation to International Telephone and Telegraph Corporation for stock in the latter corporation were set out in a detailed and carefully drafted “Agreement and Plan of Reorganization” dated as of May 5, 1972. Dealing with over $2,000,000 worth of stock, that agreement, among other extensive and detailed provisions, contained the following paragraph:
*288 “The following Stockholder is to execute non-competition undertakings upon the terms indicated ;
“Irving Kessler to undertake that he will not, either as owner, partner, officer, employee, agent, consultant manager, lessee or lessor or in any other capacity, directly or indirectly (a) for a period of 5 years after the Closing Date carry on or engage in New York or Connecticut (or such other state where the Corporations are conducting business on the Closing Date) in any business competitive with any business carried on by the Corporations on the Closing Date; and (b) for a period of one year from the Closing Date hire or otherwise engage any person employed by the Corporation during the six month period prior to the Closing Date.”
Incident to the closing of the sale on October 10, 1972, Kessler, in conformity with the provisions of their May contract, signed and delivered to ITT a letter implementing his noncompetition agreement in haec verba. At the same time, but incident to a separate agreement between plaintiff and Kessler for the continued employment of the latter, Kessler also expressly agreed not to compete with plaintiff for a period of 24 months following termination of his employment. It is not disputed that Kessler’s employment was terminated on August 1, 1978, and no contention is made that his obligations under the restrictive covenant in his employment contract did not accordingly expire on August 1, 1980.
It is recognized that there normally accompanies the voluntary sale of the good will of a commercial entity an implied obligation on the part of the seller not at any time in the future to solicit those who were customers of the business enterprise at the time of the sale — in effect an agreement not in bad faith to depreciate the value of what has been voluntarily sold (e.g., Von Bremen v MacMonnies, 200 NY 41). The majority at the Appellate Division and now the majority in our court, in reliance on that general proposition, hold that plaintiff corporation is entitled to bar Kessler forever from soliciting the business of those customers who were being served by him in October, 1972. I would concur in such a conclusion, had it not been that the *289 contracting parties themselves, by their own express agreement, made explicit provision for what was judged by them at the time of the sale to be appropriate and sufficient for the protection of the interests of the buyer, namely, a period of five years during which Kessler would not compete with plaintiff corporation in any way, directly or indirectly — a very much broader restriction than the mere obligation not to solicit old customers. It cannot be disputed that ITT as purchaser could have agreed, effectively and legally, to limit its right to enforce any implied obligation not to solicit old customers to a period of five years following the purchase (cf. George v Burdusis, 21 Cal 2d 153). Where the parties have expressly contracted in particularized detail as to their mutual obligations and rights with respect to a specific topic, customarily the courts do not overlay additional implied terms. I fail to perceive why, in view of the express agreement drafted by these parties, the law in this instance should imply obligations at variance with that agreement. Further, it would be wholly unrealistic to conclude that, because of the omission of explicit reference to an obligation not to solicit, ITT and Kessler did not intend in the quoted paragraph to express their entire agreement with respect to the protection of the business interest of ITT against future competition by Kessler. The business sophistication of ITT would make ridiculous any suggestion either that Kessler without an awareness by ITT was trying by devious means to evade what would otherwise have been his obligation not to solicit his former customers, or that ITT by studied silence was contriving to keep alive an implied obligation on the part of Kessler never to solicit his former customers. I can only conclude that both buyer and seller fully comprehended the situation and carefully tailored the details of a specific noncompetition agreement to meet the needs of the particular transaction; the court should not vary that agreement.*
I could not accept any analysis, at least in the circum *290 stances of this case, that an implied obligation not to solicit and an agreement not to compete did not relate to the same subject matter and accordingly were viewed by the parties as the subjects of discrete, separate consideration (cf. Bergum v Weber, 136 Cal App 2d 389). Whatever refinements may now be verbalized, the concern of the parties was with the protection of the business interests that ITT was acquiring against competition by Kessler. Any obligation here not to solicit is but a particularized aspect of the much broader and more constraining covenant not to compete (cf. Goldstein v Maisel, 271 App Div 971 — in action to enforce an express covenant not to compete determined to be unreasonably broad in scope, agreement enforced in part not only by a geographically limited prohibition against all competition but also by imposition of a previously unexpressed, geographically unrestricted obligation not to solicit former customers for the period of the express covenant).
Not only should the terms of the agreement made by the parties themselves be held to prevail on general principles of contract interpretation, but especially is this so in the light of the provisions of section 340 of the General Business Law which declares public policy against restrictive agreements. That this declaration does not foreclose a buyer from extracting from a seller a reasonably restrictive agreement should not be inflated to support a determination that even when the parties do make an express agreement the law may imply a still more restrictive obligation.
Accordingly, I would reverse the order of the Appellate Division and hold that no noncompetition, nonsolicitation obligations of Kessler survived the expiration date of August 1,1980.
Chief Judge Cooke and Judges Wachtler and Fuchsberg concur with Judge Gabrielli; Judge Jones dissents and votes to reverse in a separate opinion in which Judges Jasen and Meyer concur.
Order affirmed, etc.

 I note in passing that the “Agreement and Plan of Reorganization” in paragraph (d) of section 19 also contained the familiar provision that “This Agreement * * * embodies the entire agreement and understanding, and supersedes all prior agreements and understandings between the Stockholders and ITT relating to the subject matter hereof”.