OPINION OF THE COURT
 

 Alexander, J.
 

 Plaintiffs, Hyde Park Products Corp. and its president Edmund J. Lang, seek injunctive relief, an accounting and damages resulting from alleged “business torts” committed by defendants, Maximilian Lerner Corp. and its president Maximilian Lerner. They charge defendants with breach of fiduciary duty, unfair competition and breach of the implied covenant to refrain from impairing or recapturing the “good will” of Hyde Park that
 
 *319
 
 had been transferred to Lang upon the sale of Lerner’s interest in the business.
 

 We are called upon on this appeal to determine the appropriateness of the relief granted by Supreme Court.
 

 For approximately 20 years prior to 1970, plaintiff Lang developed and operated Hyde Park, a sole proprietorship engaged primarily in the purchase and resale of peat moss in the eastern United States. During this period, Lang employed Lerner as a salesman on a salary and commission basis. In June 1970, Lang restructured the business to make Lerner a 50% stockholder and an officer and director. Personal differences arose between them some years later and Lerner commenced a proceeding to dissolve Hyde Park. The dispute ultimately was submitted to an arbitrator and an award made under which Lang would make a cash offer to purchase Lerner’s 50% interest, and Lerner could elect either to accept Lang’s offer or to make a counteroffer to purchase Lang’s interest for the same price plus $75,000. Lerner chose to accept Lang’s offer of $525,000 and the sale was consummated in March 1978. The trial court found that this purchase price exceeded the value of the tangible assets of the business by more than $200,000, and that this excess was paid for Hyde Park’s goodwill.
 

 Immediately upon the sale of his interest in Hyde Park to Lang, Lerner established Maximilian Lerner Corp., and proceeded to engage in the peat moss and gardening products business. Lerner affirmatively solicited Hyde Park customers in an effort to wean them away from Hyde Park, and in doing so, he systematically used Hyde Park’s customer lists and records that he had copied while he was Hyde Park’s sales manager. Hyde Park commenced this action in 1979 seeking injunctive relief, damages and an accounting.
 

 Following a trial on liability, the court found that Lerner’s conduct was “in violation of the covenant which the law implies upon the sale of a business together with its good will — a covenant which enjoins the covert recapture by the seller of that which he has already sold
 
 (Mohawk Maintenance Co. v
 
 Kessler, 52 NY2d 276;
 
 Planet Mfg. Corp. v Goldstein,
 
 54 AD2d 896)” and issued a permanent injunction barring defendants from soliciting and selling to “Hyde Park customers”, who were defined by the court as (1) any customer who bought from Hyde Park during any three of five enumerated periods, with certain exceptions, and (2) any customer who bought both in 1976 and 1977 and also in 1978 prior to August 1, 1978. A schedule listing these customers was annexed to the injunction.
 

 
 *320
 
 The court also determined that damages should be awarded, but was of the view that the theories advanced by plaintiff upon which damages should be measured “may well have a speculative character”. These theories included the diminution of Hyde Park’s profit rates and loss of “growth opportunities” which the court thought may be attributable to general business conditions or other economic developments in the industry itself, unrelated to Lerner’s improper competition. Citing
 
 Ronson Art Metal Works v Gibson Lighter Mfg. Co.
 
 (205 Misc 155, 164,
 
 mod
 
 283 App Div 937), the court nonetheless determined that defendants should not escape scot-free from their wrongdoing, and held that “the proper measure of damages would appear to be the profits that defendants made upon the sales they improperly made to Hyde Park customers from March 24, 1978 to the hearing date.” Defendants were directed to account for such profits and a reference was ordered to determine their amount and the entry of judgment therefor.
 

 At the hearing before the referee only evidence as to defendants’ profits from sales to Hyde Park customers listed on the schedule attached to the injunction was received. The referee refused to allow evidence that some of the sales by defendants to the listed Hyde Park customers did not result from improper solicitation by Lemer or that the purchasers were no longer “customers” of Hyde Park at the time of any such sale or that some purchasers were “mega-purchasers”, whom the court had expressly excluded from the strictures of the injunction. The referee determined that defendants’ profits on sales to Hyde Park customers were $98,801.74, and judgment was entered in plaintiffs’ favor for that amount plus interest. The Appellate Division affirmed, without opinion, and this court granted defendants leave to appeal (62 NY2d 605).
 

 On this appeal defendants argue,
 
 inter alia,
 
 that because the court found that plaintiffs had failed to prove any loss resulting from the solicitation of Hyde Park customers, only nominal damages were properly recoverable; that the injunction is overly broad in that it bars all future “sales” to Hyde Park “customers”, including “mega-purchasers”, instead of only enjoining improper solicitation; that in computing defendants’ profits as the measure of plaintiffs’ damages, the referee improperly excluded proffered evidence that some of defendants’ sales to Hyde Park customers were not the result of improper solicitation, that some of the listed businesses were no longer Hyde Park customers at the time of the sales and that some of the “customers” listed on the schedule attached to the injunction were “mega-purchasers”.
 

 
 *321
 
 It is the settled law of this State that one who sells a business to another has a legal duty to refrain from acting to impair the “good will” transferred to the purchaser in exchange for part of the purchase price
 
 (Mohawk Maintenance Co. v Kessler,
 
 52 NY2d 276;
 
 Von Bremen v MacMonnies,
 
 200 NY 41;
 
 Planet Mfg. Corp. v Goldstein,
 
 54 AD2d 896). Defendant Lerner contends, however, that because the sale to Lang resulted from an arbitration award it was “involuntary”, and that he was thus “under no legal obligation restricting competition on his part in the slightest degree”
 
 (Von Bremen v MacMonnies,
 
 200 NY, at p 51,
 
 supra).
 
 As expressly found by the Trial Judge and affirmed by the Appellate Division, however, Lerner was free under the terms of the arbitration award to become either the buyer or the seller. This was not a situation in which “the owner [of goodwill] parts [with it]
 
 in invitum,
 
 as in bankruptcy proceedings or by operation of law, as in the liquidation of a partnership by lapse of time or its termination pursuant to the articles of copartnership”
 
 (Von Bremen v MacMonnies, supra,
 
 at p 51). Moreover, Lerner received considerable benefit ($525,000) in exchange for his interest. The transfer was not involuntary; “one made under restraint and without benefit to the original owner” (25 NY Jur, Good Will, § 19, at 231), and thus is subject to the “implied covenant” rule of
 
 Von Bremen
 
 and
 
 Mohawk.
 

 Through his deliberate solicitation of Hyde Park customers following the sale of his interest in Hyde Park, Lerner breached the duty against impairment of the goodwill transferred as part of the sale of the business
 
 (Mohawk Maintenance,
 
 52 NY2d, at pp 283, 285,
 
 supra; see, Von Bremen,
 
 200 NY, at pp 47-49,
 
 supra; Planet Mfg. Corp. v Goldstein,
 
 54 AD2d 896, 897,
 
 supra).
 
 Thus, plaintiffs were entitled to injunctive relief. The award of damages, however, measured solely by the profits derived by defendants from sales to Hyde Park customers was, in this case, improper.
 

 A cause of action for wrongful diversion of goodwill previously sold to a plaintiff by a defendant is sometimes characterized as one to recover for a breach of an implied covenant of the contract of sale that the seller will permanently refrain from soliciting his prior customers
 
 (Borne Chem. Co. v Dictrow,
 
 85 AD2d 646, 650). We have observed, however, that “it may be somewhat misleading to describe the duty of the seller to refrain from soliciting his former customers as one emanating from an ‘implied covenant’, since the duty is, in reality, one imposed by law in order to prevent the seller from taking back that which he has purported to sell”
 
 (Mohawk Maintenance, supra,
 
 at p 285).
 

 
 *322
 
 Indeed, the law imposes upon the seller “a specific duty to refrain from soliciting his former customers after he has sold his business and the accompanying ‘good will’ to another”
 
 {id..,
 
 at pp 285-286).
 

 The trial court found that those customers listed in the schedule annexed to the injunction were “Hyde Park customers” to whom sales had been made by defendants after March 24, 1978. Where the loss of such a customer resulted from defendants’ solicitation, plaintiffs were “entitled to recover as damages the amount of loss sustained by [them], including opportunities for profit on the accounts diverted * * * through defendants’ conduct”
 
 (Duane Jones Co. v Burke,
 
 306 NY 172, 192;
 
 Fox & Sons v King Poultry Co.,
 
 23 NY2d 914,
 
 modfg on dissenting opn
 
 30 AD2d 789, 790-791,
 
 rearg denied
 
 24 NY2d 896). Such “loss” would include both plaintiffs’ own lost profits resulting from a reduction in sales to the listed Hyde Park customers during the years in which defendants improperly solicited such customers and any lost opportunities for profits during this period. Plaintiffs may show either reduced sales to a solicited customer to whom defendant sold peat moss or that the opportunity for profit on additional sales to such customer was lost by consequence of defendants’ solicitation.
 

 The burden of establishing their ability to service the needs of such customers would rest upon plaintiffs and only those damages resulting from Lerner’s willful solicitation of Hyde Park’s customers may be recovered
 
 (Gast Furriers Supplies v Winter,
 
 247 App Div 135;
 
 Planet Mfg. Corp. v Goldstein,
 
 54 AD2d 896, 897,
 
 supra; Gramercy Brokerage Corp. v Cohen,
 
 43 AD2d 968). Defendants may rebut plaintiffs’ evidence by showing that specific sales made to Hyde Park customers did not result from solicitation or that the purchasers were no longer Hyde Park customers at the time of the sale. Defendants likewise may demonstrate, should that be the fact, that plaintiffs could not have fulfilled the orders diverted by them because of the unavailability of peat moss and thus that the “lost opportunity for profit” was not caused by their solicitation.
 

 Should defendants establish that any past sales did not come about through improper solicitation, those sales should not be considered in ascertaining plaintiffs’ damages. There was no express restrictive covenant against competition involved in the sale by Lerner to Lang. Where such a covenant is not included, a seller is free to pursue his own economic interest and may accept his former customers’ trade. Likewise, the injunction should not prohibit “sales” to Hyde Park customers; defendants should only
 
 *323
 
 be barred from improperly soliciting Hyde Park customers in the future.
 

 In ordering the reference for an assessment of damages, the trial court specifically directed that “[defendants’ sales to mega-purchasers of peat moss such as chain stores (e.g., J.C. Penny et al.) should be excluded if defendants can show that in any particular period used in defining a Hyde Park customer the mega-purchaser bought from five or more sources other than these parties.” Lerner’s proffered testimony before the referee that he knew some of the customers listed in the schedule annexed to the order of reference to be “mega-purchasers” was properly excluded as hearsay. However, testimony as to his personal observations of various brand names on peat moss being handled by Hyde Park customers was relevant and thus should have been admitted, to be given such probative value as deemed appropriate.
 

 The order of the Appellate Division should be reversed, with costs, and the matter remitted to Supreme Court for a new trial on the issue of damages only, and for modification of the injunction as indicated herein.
 

 Chief Judge Wachtler and Judges Jasen, Meyer, Simons and Kaye concur; Judge Titone taking no part.
 

 Order reversed, etc.