JOHN D. DETHLEFS, Appellant, *against* EDWARD J. H. TAMSEN, Respondent.

(Decided January 7th, 1878.)

Where a retiring partner, on being paid for the good will of the business, agrees with the remaining partner not to engage in business in opposition to him so near as to take away his customers and injure his trade, the agreement only provides for a fair protection to the continuing partner, and is not void as against public policy.

Where such is the intent and meaning of an agreement of dissolution and sale of good-will, evidence showing that a new store of the retiring partner, opened by him in the same trade within two doors of the old stand, resembled the latter in outward appearance, is material in determining whether there has been a breach of that agreement, and the amount of damage occasioned thereby.

And in such an action the continuing partner, a party to the action, may testify in what amounts his monthly receipts fell off after the opening of the opposition store.

Evidence of falling off in the receipts of the injured party, without specific proof of individual instances of loss of custom, is sufficient to warrant a jury in awarding damages.

APPEAL by the defendant from a judgment in favor of plaintiff, entered upon a verdict rendered at the trial before Chief Justice CHARLES P. DALY, and a jury.

This action was brought by Dethlefs against his former partner, Tamsen, upon a promissory note for $3,000 made by Tamsen to Dethlefs.

The answer admitted the making and delivery of the note, and set up as a defense, failure of consideration to

the extent of $2,500 of the note, to which extent the note was given in payment to the plaintiff for the good-will of the partnership upon a previous sale by plaintiff to defendant of plaintiff's interest, which sale was made upon the agreement of the plaintiff " not to injure said sale by any actions whatsoever." The answer alleged further, that after the dissolution the plaintiff opened a store near by the place of business of the late firm and of defendant, of the same character, and in various ways attracted away from defendant's store the former customers of the firm, by leading them to believe that the new store was that of the former partnership. The answer also counter claimed damages in the amount of $3,000 for setting up such business in violation of the terms of the articles of partnership as to dissolution.

The jury gave a verdict for plaintiff for $520. Plaintiff appealed. The cause was argued upon a case and exceptions, which latter, with the rulings excepted to, sufficiently appear in the opinion of the court.

*L. C. Waehner*, for appellant.

*Henry Wehle, & Simon Sultan*, for respondent.

VAN HOESEN, J.—The plaintiff simply appeals from the judgment, not having made a motion for a new trial in the court below ; and we are called upon to examine the exceptions he took upon the trial.

It is well settled that a retiring partner, by selling the good-will of the business to his associate, does not deprive himself of the right to engage in or prosecute a similar business in the vicinity of the place of business of the dissolved firm. (*White* v. *Jones*, 1 Abb. Pr. N. S. 328.) If the retiring partner, after selling the good-will, represents the new business which he establishes to be the same that the dissolved firm carried on, or if he leads customers to believe that he is carrying on business as the successor to the old firm, or if he induced his former partners to buy his interest in the good-will by falsely stating to them that he did not intend to engage in a similar business in competition with,

or in opposition to, them, he may, perhaps, be restrained by injunction from continuing to perpetrate the fraud. (*White* v. *Jones, supra.*)

The answer of the defendant contains allegations which, if supported by proof, would probably entitle him to an injunction. Equitable relief the defendant did not seek. He sought in a court of law to defeat the action on the note given for the good-will; and the question presented is, whether the exceptions taken at the trial are such that we must set aside the verdict of the jury, a verdict which seems to me to measure out substantial justice to both parties.

The original partnership articles between Dethlefs and Tamsen provide, that if either of the partners should retire from the firm, the partner keeping and carrying on the business should pay to the other for the good-will a sum equal to one-third of the net profits of the first year, and that the retiring partner should contract not to conduct any business in opposition to, or in competition with, that continued by the partner purchasing the good-will. When Dethlefs and Tamsen came to dissolve, which they did after having been partners for nearly four years, they departed from the method of valuing the good-will provided for by their partnership articles, and agreed that the price to be paid to the retiring partner for his interest in the good-will should be twenty-five hundred dollars. That sum Tamsen undertook to pay Dethlefs for his (Dethlefs') interest in the good-will, and it forms part of the three thousand dollars for which Tamsen executed to Dethlefs the note which is in suit. The evidence in the case is not before us, so that we have no means of ascertaining whether Tamsen substantiated upon the trial the allegations of his answer; and we shall not, therefore, venture an opinion as to the aspect this case would wear if Tamsen had proved that Dethlefs had deliberately defrauded him, and deceived the customers of the old firm. It appears, however, that Dethlefs, when he conveyed his interest in the business, covenanted with Tamsen that he would "not injure the sale" he had made "by any actions whatsoever." Although the language of this covenant is not at all artificial, and

though it was evidently framed by some person very imperfectly acquainted with English, I think it was intended to carry out that clause of the partnership articles which required the retiring partner, on being paid for the good-will, to agree not to engage in any business in opposition to that carried on by the continuing partner. If such be the true intent and meaning of that covenant, we have before us a case where the retiring partner not only sells the good will, but furthermore agrees not to start or carry on a competing business near enough to the continuing partner to injure his trade. It is true that no limits are specified within which Dethlefs is prohibited from starting business ; but nevertheless it is obvious that the covenant means that he should not keep a store in such proximity to the old stand that persons living in the neighborhood would be quite as likely to go to the new shop as to the old. If it meant that Dethlefs should not keep store anywhere, it would, of course, be contrary to public policy, and be illegal. We have no doubt that the learned judge at the trial properly construed the covenant, for it would be most unreasonable to say that an agreement not to injure an established trade by rivalry necessarily operated as a restraint upon the establishment of a similar business in any locality where it would not injure the purchaser of the good-will. Contracts in restraint of trade are held to be against public policy when they deprive the community of the opportunity of conveniently supplying some of its wants. Every locality is entitled to its appropriate accommodations, and if such accommodations be furnished, the law will uphold covenants against competition with those by whom they are supplied. (*Lawrence* v. *Kidder*, 10 Barb. 641.)

The true test is, whether the restraint is such as only to afford a fair protection to the interests of the party in whose favor it is given, and not so large as to interfere with the interests of the public. No precise boundary can be laid down within which the restraint would be reasonable, and beyond which excessive. (*Horner* v. *Graves*, 7 Bing. 743.) Every case, as it arises, must be determined upon its own cir-

cumstances; and we repeat that we think the learned judge was right in holding it was not against public policy for Dethlefs to covenant not to injure by competition the good will he had sold.

We see no error in the admission of the evidence of Dr. Petzold as to the resemblance in outward appearance between the new store of Dethlefs and the old store of Tamsen. If the covenant of Dethlefs has the meaning I have ascribed to it, the evidence tended directly to show a breach of it.

Nor was there any error in permitting Tamsen to show the falling off in the receipts of his business subsequently to the opening by Dethlefs of his opposition store. That evidence bore directly on the question of damages. Nothing could better show the injury accomplished by the opening of the competing store than the diminution in Tamsen's receipts. This evidence was not rendered irrelevant or immaterial, because it was allowable to the plaintiff to argue that the decrease of the receipts was possibly attributable to the dulness of the times, or to some other cause than Dethlefs' competition. The jury were instructed that they could not find in favor of the defendant's defense unless they were satisfied that the opposition store was the sole cause of the decline in the defendant's business. That instruction was certainly as favorable to the plaintiff as he had a right to claim.

The only remaining exception that I think it necessary to notice, was taken in various forms; but its real point is, that the court erred in refusing to hold that the defendant had offered no legal evidence as to the amounts of damage sustained by him. The counsel for the plaintiff contends that the defendant was bound to name in his answer the customers whose trade he had lost, and to prove his allegations as made. If such was the duty of the defendant, he has failed to make out his defense. But no such burden ever was, or ever should be, imposed upon a party asking general damages for the breach of a covenant. There is a well settled distinction between cases where general damages are recoverable and cases where special damage must be shown, in order to give a right of action at all, or to

entitle a party to recover for special injuries which the law does not presume to follow the doing of the act complained of. In *Ashley* v. *Harrison* (1 Esp. 48), where the action was for libel on an actress, in consequence of which she would not sing, and the declaration alleged as damages the loss of several performances, Lord Kenyon ruled that the box-keeper might be asked generally whether the receipts had not diminished from the time Madame Mara had declined to sing ; but that to ask if particular persons had not in consequence given up their boxes, was specific damage, and inadmissible. So in *Ingram* v. *Lawson* (6 Bing. N. C. 212), though no special damage was laid, the plaintiff was allowed to prove, in an action of libel (where the defamatory publication alleged that the plaintiff's ship was unseaworthy and had been hired to take out convicts), the average profits of a voyage to the East Indies, and that the first voyage after the libel, the profits were nearly £1,500 below the average. It was there said that the jury must have some mode of estimating the damages, and they could not be in a condition to do so unless they knew something of the plaintiff's business, and of the general return of his voyages. In *Rose* v. *Groves* (5 M. & G. 613), in an action for obstructing access to the plaintiff's house, whereby divers persons who would otherwise have come to the house and taken refreshment there were prevented, it was held to be unnecessary to name any one. Without averring any special damage, the defendant was entitled to recover, as general damages, such a sum as would put him in the same condition as if the covenant had not been broken ; and the jury were authorized to take into consideration the results of the breaches, past and future. " A man may show a general damage to his trade, though he cannot give evidence of particular instances." (*Rose* v. *Groves* [*supra*]. See also *Hartley* v. *Herring* (8 T. R. 130), and *Ward* v. *Smith* (11 Price, 19.) In contracts like this in suit, it is customary to insert a provision liquidating the damages in case of a breach, and where such a provision is found, the courts usually allow a recovery for the stipulated amount of damages. Where the parties omit to liquidate the damages,

there is no reason why courts should put a premium upon bad faith by requiring the injured party to name each particular person who has been induced to pass his store for the purpose of trading with the intruding competitor. A general allegation of loss of trade in consequence of the breach of the covenants, with proof of the diminution of receipts, is sufficient to warrant the jury in awarding damages. No question is presented here as to the amount of the recovery. It appears, however, that the jury deducted from the amount of the note the sum which the parties, at the time of the dissolution, agreed upon as the value of the good-will. They doubtless regarded the plaintiff in the light of a vendor who, after selling an article and receiving a note in payment, wilfully destroys the subject of sale before delivery.

I think there was no error at the trial, and that the judgment should be affirmed with costs.

JOSEPH F. DALY and LARREMORE, JJ., concurred.

Judgment affirmed with costs.