## (December 21, 1981)

■ BORNE CHEMICAL COMPANY, INC., Appellant, v HERMAN DICTROW et al., Respondents. — Motion by plaintiff-appellant and cross motion by defendants-respondents for reargument, resettlement and/or amendment of an order of this court, dated July 20, 1981, which determined an appeal from a judgment of the Supreme Court, Queens County, dated April 17, 1980. Motion and cross motion denied, without costs or disbursements. On the court's own motion its decision, dated July 20, 1981 [83 AD2d 595], is recalled and vacated and the following substituted decision is rendered: In an action, *inter alia*, for an injunction, an accounting and to recover damages, arising out of the alleged breach of a contractual agreement not to compete, alleged violations of section 180.03 of the Penal Law and section 340 of the General Business Law, and alleged unfair competition and unfair business practices, the plaintiff appeals from a judgment of the Supreme Court, Queens County (Santucci, J.), dated April 17, 1980, which, after a nonjury trial, dismissed its complaint on the merits. Judgment modified, on the law, by deleting the provisions dismissing the first cause of action. As so modified, judgment affirmed, the first cause of action is reinstated and a new trial is granted as to that cause of action in accordance herewith, with costs to abide the event. Defendant Herman Dictrow was the principal owner and officer of Academy Printing & Specialty Co., Inc. (Academy), which manufactured product packaging. By contract dated July 18, 1972, Herman Dictrow and the other shareholders of Academy, including defendant Marilyn Dictrow, sold their interests therein to Hydro Electronics Corporation. The contract of sale contained the following covenant not to compete: "Each Seller, other than Morris Dictrow, agrees that from and after the closing, and until such time, if any, as Sellers or any of them, shall reacquire title to the capital stock of the Company [Academy] pursuant to the provisions of paragraph 2(e) hereof, he will not, unless acting as an officer or employee of the Company, or with the Buyer's prior written consent, directly or indirectly, own, manage, operate, join, control, or participate in, or be connected as an officer, employee, partner, or otherwise with any business under any name similar to the Buyer's name, the Company's name, or the name of 'Dictrow', but the limitation or use of 'Dictrow' shall be only in

connection with a business in the same field as the Company or the Buyer, and that for a period of five (5) years after the Closing, he will not in any such manner directly or indirectly compete with the Company or become interested in any competitor of, the Company or the Buyer. The Sellers, other than Morris Dictrow, acknowledge that the remedy at law for any breach by either of them of the foregoing will be inadequate, and that the Company and the Buyer shall be entitled to injunctive relief." As part of the sale the buyer, Hydro Electronics, agreed to enter into an employment contract with Herman Dictrow on terms which were annexed to the contract of sale. The employment contract, which was also executed on July 18, 1972, was for a term of three years, with an express possibility of an additional three-year extension. It contained the following restrictive covenant: "You [Herman Dictrow] acknowledge that the operations of the Company [Academy] are intended to be nationwide. During the term provided in Paragraph 2 as from time to time [sic] and for three (3) years thereafter, you will not at any time or at any place within any of the States of the United States or the District of Columbia, in which the Company operates at the time of termination of your employment, directly or indirectly, own, manage, operate, control, be employed by, act as agent for, participate in, or be connected in any manner with the ownership, management, operation or control of any business similar to or competitive with the business or businesses conducted by the Company. In the event of any termination of your employment, the phrase 'business or businesses conducted by the Company' used in the immediately preceding sentence of this Paragraph 9 shall mean the business conducted or proposed to be conducted by the Company, its subsidiaries or any other subsidiaries of the Company at the date of such termination." Thereafter, Hydro Electronics merged with the plaintiff, Borne Chemical Company (Borne), and the latter succeeded to its ownership of Academy and to its rights under both contracts. Herman Dictrow remained with Borne as president and chief executive officer of its Academy division until he was discharged on January 15, 1979. In the spring of 1979, Dictrow organized Majestic Packaging Co. (Majestic). Although Dictrow's wife is the record owner of Majestic, Special Term found that, in fact, he was its principal operating officer. Majestic then entered into direct competition with the Academy division of Borne. Borne commenced this action against Herman Dictrow, his wife Marilyn, Majestic, and two of Borne's former employees, Frank Conigliaro and Ira Breakstone. The first cause of action asserted in Borne's complaint alleged that Dictrow, through Majestic and its nominal owner Marilyn Dictrow, was competing against it in violation of the covenant against competition in his employment contract with Borne. The second cause of action alleged that Dictrow had violated section 180.03 of the Penal Law proscribing commercial bribery and had violated section 340 of the General Business Law proscribing agreements to acquire a monopoly or in restraint of trade by his entering into agreements with Borne's employees and/or agents Conigliaro and Breakstone to divert customers from Borne to Majestic. The third cause of action alleged that the defendants had engaged in unfair competition and unfair business practices. After a nonjury trial, Trial Term dismissed the complaint. The first cause of action must be reinstated and a new trial granted as to it. Implicit in the sale of a business, unless expressly reserved, is the sale of its "good will". Consequently, the seller of a business will not be permitted to undermine that good will by soliciting his former customers (*Mohawk Maintenance Co. v Kessler*, 74 AD2d 511, affd 52 NY2d 276, 283-287). Trial Term should determine whether the defendants Herman and Marilyn Dictrow, who were sellers of interests in Academy, solicited the business of any of the customers of Borne who had previously been customers of Academy at the time of its sale. If such solicitation is proven, Trial Term should determine whether it resulted in a

diversion of their trade from Borne to Majestic. Plaintiff has requested injunctive relief against such solicitation, but on appeal defendants have alleged that the Academy division of Borne has become bankrupt and that its plant has been closed. At the new trial it should be determined whether Borne's Academy division has indeed failed, and if so, whether there remains any good will to be protected by injunctive relief (see *Greenslete v Ferguson,* 191 App Div 745; 25 NY Jur, Good Will, § 6; 38 CJS, Good Will, § 2). We agree with Trial Term that the plaintiff has failed to prove a violation of the express covenant against competition contained in the contract of sale since that covenant expired five years after the closing and prior to the time Borne discharged Dictrow from its employment and before he founded a competing business. However, depending upon the facts developed at the new trial, Borne may prevail in its request for enforcement of the covenant against competition contained in the employment agreement. The original employment contract expired on July 18, 1975 and was extended for an additional period expiring July 21, 1978. The fact is, however, that defendant Dictrow remained in plaintiff's employ after July 21, 1978. It is the rule that when, upon the expiration of a contract of employment for a definite term, the employee continues to render the same services as he rendered during the term of the contract without expressly entering into any new agreement, it will be presumed that he is serving under a new contract having the same terms and conditions as the original one (53 Am Jur 2d, Master and Servant, § 23), and provisions and restrictions forming essential parts of the original contract, even though collateral to the employment itself, continue in force (56 CJS, Master and Servant, § 23; *Art Wire & Stamping Co. v Johnson,* 141 NJ Eq 101, affd 142 NJ Eq 723). Where the original term of an employment contract is for more than one year, a continuance in employment will not, because of the Statute of Frauds (General Obligations Law, § 5-701, subd a, par 1), support a presumption of a renewal for the full period of the original term, but only of employment from year to year thereafter (*Carter v Bradlee,* 245 App Div 49, affd 269 NY 664; *Shenn v Fair-Tex Mills,* 26 AD2d 282, 283; *Matter of Schlaifer [Kaiser],* 84 Misc 2d 817, affd 50 AD2d 749). The presumption is one of fact and may be rebutted (*Adams v Fitzpatrick,* 125 NY 124, 130). In *Hubbell v Hubbell Highway Signs* (72 AD2d 923), which is markedly similar to the instant case, the plaintiff's contract of employment was for a term of five years and provided, in paragraph 6 thereof, that plaintiff covenanted and agreed " 'that during the term of this Agreement and for the three year period following the termination of [his] employment under this Agreement' " he would not compete with defendants and they, in turn, covenanted to pay plaintiff " 'an annual sum of $5,000 for three years in consideration of the undertakings contained in this paragraph 6, such payment to commence at the time of such termination.' " Plaintiff worked for the defendants for almost 10 years without any express extension of the contract of employment, after which his services were terminated and he engaged in a competing business. The Appellate Division, Fourth Department, held that by retaining him on the payroll the defendants arguably became obligated to pay plaintiff's salary for successive one-year extensions of the original contract. However, it held (p 924) that retaining plaintiff on the payroll, "in the absence of written extensions *or other agreements,* cannot [because of General Obligations Law, § 5-701, subd a, par 1] have *impliedly* resulted in imposing on the parties the binding mutual obligations to render performance over a three-year period in the future as expressed in the bilateral promises contained in the sixth paragraph" (emphasis added). *Hubbell* is distinguishable from the case at bar because there the question was whether the covenant not to compete could impliedly be read into

the one-year extensions of the original contract. Reading them into that contract would have meant that it could not be fully performed within a year and, accordingly, the court held that the agreement not to compete began to run at the conclusion of the five-year term of the original contract. In this case, however, the employment contract provided that the covenant not to compete would continue "[d]uring the term provided in Paragraph 2 as from time to time [*sic*] and for three years thereafter." The apparent intent of this inartfully worded clause was that defendant Herman Dictrow could not compete during the original term of the contract and "as from time to time [extended]" and for three years thereafter. Thus, in this case we have a written instrument, signed by Dictrow, the party to be charged, to the effect that he would not compete for three years after any extension of the original term of employment. Thus construed, the covenant not to compete for three years would begin to run upon the expiration of the last extension of the contract, and would not be violative of the Statute of Frauds. Unless the contrary is proved at the retrial, it must be presumed that defendant Dictrow's employment was extended for one year from July 21, 1978, that the conditions of the original contract were those of the extension, and that absent an earlier breach of the contract by plaintiff, defendant Dictrow was bound not to compete during the term of the one-year extension and thereafter from July 22, 1979 until July 21, 1982. Although generally agreements not to compete are unenforceable absent a showing that the employee's skills are unique or that he has knowledge of the employer's trade secrets (*Columbia Ribbon & Carbon Mfg. Co. v A-1-A Corp.,* 42 NY2d 496, 499; *Continental Dynamics Corp. v Kanter,* 64 AD2d 975), where the restrictive covenant has been agreed to in conjunction with the sale of the employee's business, the covenant, if reasonable, will be enforced (*Mohawk Maintenance Co. v Kessler,* 74 AD2d 511, *supra*). The covenant in the case at bar enjoined competition by Dictrow "at any place within any of the States of the United States or the District of Columbia, in which the Company operates at the time of termination of [his] employment". Borne has limited its request for injunctive relief to the area encompassed within a 150-mile radius of its Glendale, New York, office. As thus limited, we find that the covenant is not unduly restrictive, either in terms of place or duration, and the clause is therefore reasonable. However, enforcement of its provisions must turn upon the resolution of one further issue only alluded to at trial. In cases of involuntary discharge, if the employment has been terminated by the employer without cause, the employer will not be permitted to invoke the covenant (*Post v Merrill Lynch, Pierce, Fenner & Smith,* 48 NY2d 84, 88-89). The reason for this rule is simply that the discharge of an employee without cause before the expiration of that term of his contract constitutes a breach of the contract by the employer, thereby depriving it of the right to the enforcement of the other conditions thereof (Simpson, Contracts [2d ed], § 184). Termination of the employment relationship by the employer without just cause, "necessarily destroys the mutuality of obligation on which the covenant [not to compete] rests" (*Post v Merrill Lynch, Pierce, Fenner & Smith, supra,* p 89). In the present case, witnesses for Borne testified that Dictrow had been fired for incompetence. Counsel for Dictrow unsuccessfully attempted, through cross-examination of these witnesses, to establish that the termination had been for other than good cause. However, neither of the parties focused upon this issue and the court made no findings in this respect. As resolution of this issue is critical to the determination of whether the covenant against competition should be enforced, it should be fully litigated upon remand. Concerning the request for a judgment enjoining future competition in accordance with the terms of the restrictive covenant, we note that if the Academy division has

ceased operating and in effect is no longer in competition, the injunctive relief should be denied. The dismissal of the second and third causes of action asserted in plaintiff's complaint was proper. Trial Term found as a fact from conflicting testimony that any improper offers by Dictrow to Conigliaro and Breakstone had not been accepted by them and had not resulted in a diversion of business from Borne. Since the finding turned upon credibility, the determination of the trier of the facts who saw and heard the witnesses should be accorded the greatest weight (see *Amend v Hurley,* 293 NY 587, 594; *Barnet v Cannizzaro,* 3 AD2d 745, 747). Trial Term's finding in this regard is supported by the evidence and is therefore affirmed. We now address the question of the proper relief to be granted to plaintiff on its first cause of action should it be determined on the retrial (1) that defendants Herman and Marilyn Dictrow improperly impaired the good will of Academy, which they had sold to Borne's predecessor in interest, by soliciting the former customers of Academy and diverting their trade from Borne to Majestic and/or, (2) that Herman Dictrow was discharged for cause thereby rendering the covenant not to compete contained in his employment contract enforceable. Although the first cause of action seeks only injunctive relief, the trial court may award monetary damages for proven past diversion of good will or competition in violation of the employment contract (see CPLR 3017, subd [a]; cf. *Y.J.D. Rest. Supply Co. v Dib,* 98 Misc 2d 462, 464; *Muller v Vettel,* 25 How Prac 350, 355; Ann., 31 ALR 1174; see, also, Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3017:5). A cause of action for wrongful diversion of good will previously sold to a plaintiff by a defendant sounds in breach of an implied covenant of the contract of sale that the seller will permanently refrain from soliciting his prior customers (*Mohawk Maintenance Co. v Kessler,* 74 AD2d 511, affd 52 NY2d 276, 284-286, *supra*). A cause of action to recover for competition in violation of a noncompetition clause in an employment contract sounds in breach of that contract. The measure of damages for wrongful diversion of good will or competition in violation of such a restrictive covenant is the loss sustained by reason of the breach, including the net profits of which the plaintiff was deprived by the defendant's acts (*Weinrauch v Kashkin,* 64 AD2d 897, 898; *Scientific Mgt. Inst. v Mirrer,* 29 AD2d 962; Ann., 127 ALR 1152). Trial Term held that plaintiff failed to prove damages under the second and third causes of action, which sounded in tort, finding that the clearly proved loss of business sustained by plaintiff might just as well have occurred as the result of new credit policies which it had instituted, as from the competition of the defendants. It is our view that the interests of justice require that the question of damages under the first cause of action be retried. The record in this case is far from clear that the parties or the trial court applied the correct burden of proof on the issue of damages or understood the quality of the proof necessary to sustain that burden. In order to recover substantial damages for breach of the contracts in question, the plaintiff has the burden of proving that it sustained a net loss of profits as the result of the wrongful competition of the defendants. Although the fact that the plaintiff has sustained damages must be proved with certainty, nothing like precise mathematical accuracy can be obtained in the calculation of the amount of damages (Ann., 127 ALR 1152; 13 NY Jur, Damages, § 17). In the case of *Dethlefs v Tamsen* (7 Daly 354, 360) the court explained that: "there is no reason why courts should put a premium on bad faith by requiring the injured party to name each particular person who has been induced to pass his store for the purpose of trading with the intruding competitor." Thus, proof of competition in violation of the contract between the parties and a loss of profits with the onset of that competition will be sufficient to warrant an award of damages

(see *Dethlefs v Tamsen, supra*). Where it is certain that damages have been caused by a breach of contract and the only question is as to their amount, there can rarely be good reason for refusing to grant, on that account, any damages whatever for the breach. A person violating his contract should not be permitted entirely to escape liability because the amount of damages which he has caused is uncertain (*Wakeman v Wheeler & Wilson Mfg. Co.*, 101 NY 205, 209; *Randall-Smith, Inc. v 43rd St. Estates Corp.*, 17 NY2d 99, 106). In that event, the trier of the facts, on the best evidence of which the case is susceptible, may apply experience and common sense to the facts proved so as to determine and award such damages as may be reasonably calculated to be the result of the defendant's breach (*Rubin v Siegel*,188 App Div 636, 640; 13 NY Jur, Damages, § 18). Where the plaintiff has met his burden of proving a net loss of profits due to the defendant's competition, the latter may introduce evidence to show that by reason of economic depression or some other cause than the competing business, the plaintiff's net profits would have been less (1 Sedgwick, Damages [9th ed], § 182). If the defendant does come forward with such evidence, the plaintiff must either successfully rebut it or adduce a preponderance of proof showing with reasonable certainty the proportion of the loss of profits attributable to the wrongful act of the defendant and recoverable as damages as opposed to the proportion due to other causes (see 22 Am Jur 2d, Damages, § 296). In the event that wrongful competition is proven but the proportion of lost profits due to that competition cannot be established, then plaintiff will be entitled to an award of nominal damages only (13 NY Jur, Damages, § 6; *Weinrauch v Kashkin*, 78 AD2d 852). The proof at the trial in this case established that the plaintiff suffered a loss of business after the defendants began to compete. There was also proof tending to show that at the same time the plaintiff instituted a new credit policy and that some of its loss of customers may have been occasioned by that new policy. It is possible that upon a new trial in which the proper rules regarding the assessment of plaintiff's damages are appreciated and adhered to, the plaintiff may be able to prove the proportion of its lost profits attributable to the defendants' competition as opposed to its new credit policy, and thereby establish substantial damage. We think that an opportunity should be afforded to it to do so (see *Lieberman v Graf Realty Holding Co.*, 174 App Div 774, 778). Damiani, J. P., Mangano, Rabin and Gulotta, JJ., concur.